1

2

3

4

5

6

7

8                                   UNITED STATES DISTRICT COURT

9                              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DEMARREA McCOY-GORDON,                          No.  2:19-cv-1586 JAM KJN P

12                  Plaintiff,

13          v.                                       FINDINGS AND RECOMMENDATIONS

14   HERNANDEZ,

15                  Defendant.

16

17   I.  Introduction

18          Plaintiff is a state prisoner, proceeding pro se.  Plaintiff seeks relief pursuant to 42 U.S.C.

19   § 1983, and is proceeding in forma pauperis.  On February 11, 2020, defendant filed a motion for

20   summary judgment, which is fully briefed.  As discussed below, the motion should be denied.

21   II.  Plaintiff's Allegations

22          In the verified amended complaint, plaintiff alleges that defendant Hernandez refused to

23   re-locate plaintiff from cell 215, which had water covering more than half the cell and reeked of a

24   "strong smell of black mold," despite many other cells being available.  (ECF No. 13 at 2.)  As a

25   result of defendant's refusal to re-house plaintiff, plaintiff was forced to balance himself over the

26   toilet and squat to relieve himself in order to avoid slipping or getting his feet soaked, and forced

27   to inhale black mold for the duration of his stay in orientation.  Plaintiff seeks declaratory and

28   monetary relief.  (ECF No. 13 at 5.)

                                                   1

III.  Legal Standard for Summary Judgment

        Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil Procedure 56 is met.  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c)).  "Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case."  Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.

        Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a

1   dispute exists.  <u>See</u> Fed. R. Civ. P. 56(c); <u>Matsushita</u>, 475 U.S. at 586 n.11.  The opposing party

2   must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

3   of the suit under the governing law, <u>see</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248

4   (1986); <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir.

5   1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return

6   a verdict for the nonmoving party, <u>see</u> <u>Wool v. Tandem Computers, Inc.</u>, 818 F.2d 1433, 1436

7   (9th Cir. 1987), <u>overruled in part on other grounds</u>, <u>Hollinger v. Titan Capital Corp.</u>, 914 F.2d

8   1564, 1575 (9th Cir. 1990).

9          In the endeavor to establish the existence of a factual dispute, the opposing party need not

10   establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

11   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

12   trial."  <u>T.W. Elec. Serv.</u>, 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce

13   the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

14   <u>Matsushita</u>, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

15   amendments).

16          In resolving a summary judgment motion, the court examines the pleadings, depositions,

17   answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R.

18   Civ. P. 56(c).  The evidence of the opposing party is to be believed.  <u>See</u> <u>Anderson</u>, 477 U.S. at

19   255.  All reasonable inferences that may be drawn from the facts placed before the court must be

20   drawn in favor of the opposing party.  <u>See</u> <u>Matsushita</u>, 475 U.S. at 587; <u>Walls v. Central Costa</u>

21   <u>County Transit Authority</u>, 653 F.3d 963, 966 (9th Cir. 2011).  Nevertheless, inferences are not

22   drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from

23   which the inference may be drawn.  <u>See</u> <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224,

24   1244-45 (E.D. Cal. 1985), <u>aff'd</u>, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a

25   genuine issue, the opposing party "must do more than simply show that there is some

26   metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could

27   not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

28   trial.'"  <u>Matsushita</u>, 475 U.S. at 586 (citation omitted).

By contemporaneous notice provided on February 11, 2020 (ECF No. 27-2), plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (*en banc*); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

IV.  Undisputed Facts ("UDF")[1]

1.  At all times relevant herein, plaintiff was an inmate in the custody of the California Department of Corrections and Rehabilitation ("CDCR"); plaintiff was housed at California State Prison, Sacramento ("CSP-SAC") at the time of the alleged violation.

2.  Non-health care inmate appeals are used for allegations concerning conditions of confinement in prison.

3.  Non-health care appeals are reviewed by the institution Appeals Office and the Office of Appeals.

4.  When an inmate submits an appeal that does not comply with regulations governing the appeal process, the Appeals Coordinator may reject or "screen out" and return the appeal, including the reason for the appeal's return, and instructions on how to correct the defect, if correction is possible.

5.  The Office of Appeals keeps an electronic record of inmate appeals that proceed through the third level of review.  When an inmate appeal is received by the Office of Appeals, it is assigned a third level tracking number, whether it is screened out or accepted for review.

6.  When the Institutional Appeals Office receives an inmate appeal, the practice is for an Appeals Coordinator to assign a log number and make an initial provisional determination of the issue raised by the appeal.

7.  Between March 19, 2019, and August 12, 2019, plaintiff did not receive a third and final level of review of an inmate appeal related to the allegations raised in plaintiff's amended complaint.

8.  This action was filed on August 12, 2019.  (ECF No. 1.)

---

[1]  For purposes of summary judgment, the undersigned finds the following facts are undisputed, unless noted otherwise.

1   **Appeal Log Number SAC-C-19-01390**

2       9.   On March 28, 2019, plaintiff signed inmate appeal log number SAC-C-19-01390, in

3   which plaintiff alleged that on March 19, 2019, he was assigned to C8-Cell 215 and the following

4   day he noticed a leak in the ceiling which caused puddles on the cell floor.  (ECF No. 27-3 at 12.)

5       10.   On April 3, 2019, plaintiff submitted a CDCR 22 form noting that he submitted a 502

6   regarding the unsanitary cell conditions on March 28, 2019.  (ECF No. 28 at 14.)  On April 5,

7   2019, staff responded that SAC-C-19-01390 was received on March 29, 2019, and assigned on

8   April 4, 2019.  (Id.)  Staff added:  "You must be patient.  The appeals unit needs time to process

9   and has 5 working days, due 5/13/19."  (ECF No. 28 at 14.)

10      11.   Appeal log number SAC-C-19-01390 was assigned for first level response on April 4,

11  2019.  (ECF No. 27-3 at 38; 28 at 16.)  The first level appeal response is dated April 19, 2019.

12  (ECF Nos. 27-3 at 15; 28 at 21-22.)  The appeal was partially granted at the first level; plaintiff's

13  request for a work order was granted, the repairs were completed, and his request for monetary

14  compensation was denied because it is outside the scope of the 602 process.  (ECF Nos. 27-3 at

15  15; 28 at 21-22.)

16      12.   On April 28, 2019, plaintiff submitted a CDCR 22 form stating that about April 22,

17  2019, a maintenance worker approached plaintiff's cell, and asked plaintiff if he would withdraw

18  his appeal SAC-C-19-01390 if the worker fixed the leak.  (ECF No. 28 at 18.)  Prison staff

19  responded on May 1, 2019, "your choice of what to do."  (Id.)

20      13.   On May 15, 2019, plaintiff submitted a CDCR 22 form inquiring about the status of

21  his 602 regarding the flooded cell.  (ECF No. 27-3 at 67; 28 at 20.)  On May 17, 2019, staff

22  responded that SAC-C-19-01390 was assigned and completed; "copy attached and sent May 9,

23  2019."  (ECF No. 27-3 at 67.)

24      14.   On May 20, 2019, plaintiff received the first level response which did not include the

25  return of SAC-C-19-01390.[2]  (ECF No. 28 at 11-12.)

26  ─────────────
27  [2]  Defendant provides a copy of plaintiff's May 21, 2019 CDCR 22 claiming plaintiff did not
    receive the first level response until May 20, 2019, and would like to have his 602 returned for
    second level review.  (ECF No. 27-3 at 14.)  Prison staff J. Hess responded that the "602 was sent
28  back to plaintiff with the first level response on May 9, 2019."  (Id.)  In opposition, plaintiff filed

15. On May 22, 2019, plaintiff submitted a CDCR 22 form stating that "on 5/20/19 [he] received a first level review response to [his] 602 # SAC-C-19-01390 which was partially granted." (ECF Nos. 27-3 at 59, 28 at 24.) Plaintiff expressed his dissatisfaction and asked that his 602 be returned for second level review. (Id.) On May 22, 2019, staff responded, stating that plaintiff's 602 was sent back to plaintiff with the first level appeal response on May 9, 2019. (Id.) On May 22, 2019, plaintiff requested supervisor review, objecting that the 602 was not returned; rather, plaintiff only received a first level response on May 20, 2019, after inquiring about the whereabouts of his 602 on the May 15, 2019 CDCR 22 form. (ECF No. 27-3 at 59.) Plaintiff added that he would not be asking for the return of the 602 if it had accompanied the first level review response. (Id.)

16. On May 23, 2019, plaintiff filed a CDCR 22 noting that he submitted a 602[3] about the administration withholding appeal SAC-C-19-01390. (ECF No. 28 at 25.) On May 24, 2019, prison staff responded, stating the appeals office had received plaintiff's May 23, 2019 appeal. (Id.)

17. Plaintiff states appeal log number SAC-C-19-01390 was returned to him without the proper rejection notice on June 26, 2019, August 19, 2019, August 29, 2019, and September 13, 2019.[4] (ECF Nos. 27-3 at 65; 28 at 29.)

_____

a declaration confirming he received the first level response on May 20, 2019, but the response did not include the original 602. (ECF No. 28 at 11.) Defendant provided no declaration from Hess or other appeals coordinator confirming that the first level response was sent to plaintiff on May 9, 2019, or attesting that the original 602 was appended to the first level response. Defendant's declarations are silent as to such matters. (ECF No. 27-3 at 5-7 (Vasquez Decl.); 20-23 (Hendricks' Decl.).)

[3] Plaintiff's new 602 sought return of 602 No. SAC-C-19-01390 so plaintiff could file a request for second level review. (ECF No. 28 at 26.) The 602 form reflects that prison staff rejected the 602 on June 3, 2019, but no reason is given. (ECF No. 28 at 26-27.) The numbers portion of the form is blacked out; the number 1911572 is handwritten on top. This appeal is not the same as plaintiff's subsequent appeal No. SAC-C-19-02210. (Compare ECF No. 27-3 at 10 to ECF No. 28 at 26.)

[4] In his opposition, plaintiff argues that prison officials further obstructed plaintiff's attempt to process his appeal at the second level by continuously returning his appeal a total of four times, without a documented rejection notice, requiring plaintiff to seek third level intervention. (ECF No. 28 at 3-5.) In his declaration, plaintiff refers to the June 3, 2019 memo bearing his

18.  On October 21, 2019, appeal log number SAC-C-19-01390 was accepted at the second level of review.  (ECF Nos. 27-3 at 23, 31; 28 at 36.)  On October 21, 2019, plaintiff was advised that appeal log number SAC-C-19-01390 was sent to the AW BS Plant Ops Supervisor for second level response.  (ECF No. 28 at 36.)  Plaintiff was advised that if he was dissatisfied with the second level response, plaintiff had thirty days from receipt of the response to forward his appeal to the third level of review.  (Id.)  Plaintiff was also provided the mailing address for sending the request for third level review.  (Id.)

19.  On October 21, 2019, the appeals office sent plaintiff's appeal log number SAC-C-19-01390 to the AW BS Plant Ops Supervisor, asked that the appeal be assigned to staff for second level response, and noted the November 12, 2019 due date.  (ECF No. 27-3 at 31.)

20.  On November 5, 2019, the warden issued a second level review response.  (ECF Nos. 27-3 at 49-50; 28 at 38-39.)  Plaintiff's appeal was partially granted on the basis that a work order was generated and completed on April 15, 2019.  (ECF Nos. 27-3 at 50; 28 at 39.)  The reviewer noted that plaintiff's 602 appeal "was routed to Plant Operations due to the request for a Work Order."  (Id.)  Plaintiff's request for monetary compensation was denied as outside the scope of the appeals process.  (Id.)

**Appeal Log number SAC-C-19-02210**

21.  On May 28, 2019, plaintiff filed inmate appeal log number SAC-C-19-02210, in which plaintiff alleged that he only received a first level response in inmate appeal log number SAC-C-19-01390 and did not receive the inmate appeal (CDC form 602) back.  (ECF No. 27-3 at 10.)

////

---

handwritten notes at the top, and confirms that his handwritten notes document each day he received a rejection.  (ECF No. 28 at 12.)  Defendant does not address plaintiff's argument. Hendricks declares that all inmate appeals, regardless of disposition, are assigned a log number for tracking purposes, and that "appeals that were rejected or cancelled will be reflected in IATS as a single line entry.  (ECF No. 27-3 at 22.)  However, Hendricks did not provide a copy of the IATS.  (ECF No. 27-3 at 20-23.)  Rather, Hendricks provided only appeals accepted on or after March 19, 2019, and completed through August 12, 2019.  (ECF No. 27-3 at 22.)  In other words, no record of rejected or cancelled appeals for this time frame was provided.

22.  The appeals coordinator responded by letter dated June 3, 2019.  (ECF No. 27-3 at 54.)  The appeals coordinator noted that plaintiff's appeal log number SAC-C-19-02210 was returned to plaintiff because his previous appeal SAC-C-19-01390 was "attached as 'Treat as Original.'"  (ECF No. 27-3 at 54.)  The response included a copy of inmate appeal log number SAC-C-19-01390 stamped "treat as original."  (ECF No. 27-3 at 32-37.)

The bottom of the letter provides a space for the inmate's note.  (ECF No. 27-3 at 18.)  Plaintiff wrote "I would like my 602 # SAC-C-19-01390 processed at the second level."  (ECF Nos. 27-3 at 18, 65; 28 at 29.)  Plaintiff's writing is not dated.  (Id.)

23.  Plaintiff appealed this response to the Office of Appeals on September 20, 2019.

24.  On October 3, 2019, the Office of Appeals screened out inmate appeal SAC-C-19-02210 because plaintiff was not authorized to bypass a level and forwarded the inmate appeal to CSP-SAC for processing.  (ECF No. 27-3 at 9, 70; 28 at 35.)  Appeal SAC-C-19-02210 was forwarded to the CSP-SAC Appeals Coordinator on October 3, 2019.  (ECF No. 28 at 34.)

25.  Subsequently, plaintiff was sent an October 21, 2019 screening notice by CSP-SAC, which states:

> LEGAL, Processing of Appeals, 10/09/2019
> Log Number:  SAC-S-19-02210
>
> (Note:   Log numbers are assigned to all appeals for tracking purposes.  Your appeal is subject to cancellation for failure to correct noted deficiencies.
>
> The enclosed documents are being returned to you for the following reasons:
>
> AO Other
>
> PLEASE NOTE:  LOG number SAC-C-19-02210 has been given a Treat As Original stamp and is being assigned at the SLR [second level review] and is due by 11/25/19 back to the appeals unit.  As your issue with SAC-C-19-01390 has been resolved this appeal is being returned with no further action.

(ECF No. 27-3 at 60.)[5]  The third level staff response box is stamped October 3, 2019 on the

---

[5]  Plaintiff also provided a copy of the October 21, 2019 notice; in addition to crossed out and illegible handwriting at the bottom, the legible handwriting reads:  "I received this notice on Thursday 10/31/19.  I documented all rejection dates due to administration not doing so on original."  (ECF No. 28 at 37.)  This copy bears no received stamp or other indicia documenting it

8

1    "rejected" line.  (ECF No. 27-3 at 62.)

2    V.  Standards Governing Exhaustion of Administrative Remedies

3          The Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a), requires a

4    prisoner challenging prison conditions to exhaust available administrative remedies before filing

5    suit.  McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002); 42 U.S.C. § 1997e(a) ("No action

6    shall be brought with respect to prison conditions under section 1983 of this title, or any other

7    Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such

8    administrative remedies as are available are exhausted.").  Exhaustion is a precondition to suit;

9    exhaustion during the pendency of the litigation is insufficient.  McKinney, 311 F.3d at 1199-

10   1200.  This requirement promotes the PLRA's goal of efficiency by:  "(1) 'giv[ing] prisoners an

11   effective incentive to make full use of the prison grievance process'; (2) reducing prisoner suits as

12   some prisoners are 'persuaded by the proceedings not to file an action in federal court'; and

13   (3) improving the quality of any remaining prisoner suits 'because proper exhaustion often results

14   in the creation of an administrative record that is helpful to the court.'"  Nunez v. Duncan, 591

15   F.3d 1217, 1226 (9th Cir. 2010) (quoting Woodford v. Ngo, 548 U.S. 81, 94-95 (2006)).

16         "Proper exhaustion demands compliance with an agency's deadlines and other critical

17   procedural rules."  Woodford, 548 U.S. at 90.  These rules are defined by the prison grievance

18   process itself, not by the PLRA.  Jones v. Bock, 549 U.S. 199, 218 (2007).  The filing of an

19   untimely grievance or appeal is not proper exhaustion.  See Woodford, 548 U.S. at 83-84.  "[A]

20   prisoner must 'complete the administrative review process in accordance with the applicable

21   procedural rules, including deadlines, as a precondition to bringing suit in federal court.'"  Harvey

22   v. Jordan, 605 F.3d 681, 683 (9th Cir. 2010) (quoting Marella v. Terhune, 568 F.3d 1024, 1027

23   (9th Cir. 2009)).  In California, a grievance must be timely appealed through the third level of

24   review to complete the administrative review process.  Harvey, 605 F.3d at 683; Cal. Code Regs.

25   tit. 15, § 3084.1(b).

26         The State of California provides its inmates and parolees the right to administratively

27

28   was received by the appeals office.

                                                9

1  appeal ''any policy, decision, action, condition, or omission by the department or its staff that the

2  inmate or parolee can demonstrate as having a material adverse effect upon his or her health,

3  safety, or welfare.'' Cal. Code Regs. tit. 15, § 3084.1(a).  In order to exhaust available

4  administrative remedies, a prisoner must proceed through three formal levels of appeal and

5  receive a decision from the Secretary of the CDCR or his designee.  Id. § 3084.1(b),

6  § 3084.7(d)(3).

7        The amount of detail in an administrative grievance necessary to properly exhaust a claim

8  is determined by the prison's applicable grievance procedures.  Jones, 549 U.S. at 218; see also

9  Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010) ("To provide adequate notice, the prisoner

10  need only provide the level of detail required by the prison's regulations").  California prisoners

11  are required to lodge their administrative complaint on a CDCR-602 form (or a CDCR-602 HC

12  form for a health-care matter).  Cal. Code Regs. tit. 15, § 3084.2(a)(3-4).  An inmate has thirty

13  calendar days to submit an appeal from the occurrence of the event or decision being appealed, or

14  "upon first having knowledge of the action or decision being appealed." Cal. Code Regs. tit. 15,

15  § 3084.8(b).

16        Prison officials have thirty working days from the date of receipt of an inmate's grievance

17  to issue a first level response; thirty working days from the date of receipt of an inmate's appeal

18  of a first level decision to issue a second level response; and sixty working days from the date of

19  receipt of an inmate's appeal of a second level decision to issue a third level response. 15 Cal.

20  Code Regs. § 3084.8(c).  Deviation from these time limits is expressly authorized in certain

21  circumstances, including the "'[u]navailability of the inmate or parolee, or staff, or witnesses,'

22  and where "[t]he complexity of the decision, action or policy require[s] additional research.'" Id.

23  at § 3084.8(d)(1), (2).  Under Section 3084.8(e), "[e]xcept for the third level, if an exceptional

24  delay prevents completion of the review within specified time limits, the appellant, within the

25  time limits provided [above], shall be provided an explanation of the reasons for the delay and the

26  estimated completion date." Id. at § 3084.8(e).

27        An inmate must exhaust available remedies, but is not required to exhaust unavailable

28  remedies.  Albino v. Baca, 747 F.3d 1162, 1171 (9th Cir. 2014) (en banc).  "To be available, a

10

1  remedy must be available 'as a practical matter'; it must be 'capable of use; at hand.'"  <u>Id.</u>

2  (quoting <u>Brown v. Valoff</u>, 422 F.3d 926, 936-37 (9th Cir. 2005)).  "Accordingly, an inmate is

3  required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain

4  'some relief for the action complained of.'"  <u>Ross v. Blake</u>, 136 S. Ct. 1850, 1858 (2016) (quoting

5  <u>Booth v. Churner</u>, 532 U.S. 731, 738 (2001)).

6        Failure to exhaust under the PLRA is "an affirmative defense the defendant must plead

7  and prove."  <u>Jones</u>, 549 U.S. at 204.  It is the defendant's burden to prove that there was an

8  available administrative remedy, and that the prisoner failed to exhaust that remedy.  <u>Albino</u>, 747

9  F.3d at 1172.  In most circumstances, the appropriate procedural mechanism is a motion for

10  summary judgment under Federal Rule of Civil Procedure 56, with the defendant attaching the

11  evidence necessary to demonstrate a failure to exhaust.  <u>Albino</u>, 747 F.3d at 1166.

12  VI.  <u>Has Defendant Met Initial Burden?</u>

13        Here, it is undisputed that:  (a) CDCR has a grievance process; (b) plaintiff's inmate

14  appeal log number SAC-C-19-01390 would have exhausted plaintiff's instant claims; and

15  (c) plaintiff did not receive a third level review on the merits of his claims before filing this

16  action.[6]  Such undisputed facts establish that administrative remedies were available at CSP-SAC,

17  and plaintiff did not receive a third level review on the merits of his claims prior to filing this

18  action.  <u>Woodford</u>, 548 U.S. at 90-91 (an untimely appeal will not satisfy the exhaustion

19  requirement).  Thus, the burden shifts to plaintiff to come forward with evidence "showing that

20  there is something in his particular case that made the existing and generally available

21  administrative remedies effectively unavailable to him."  <u>Albino</u>, 747 F.3d at 1172.

22  VII.  <u>Were Administrative Remedies Rendered Unavailable?</u>

23        In his opposition, plaintiff argues that prison staff obstructed his efforts to exhaust his

24  administrative remedies by failing to timely return plaintiff's original appeal and "making

25  plaintiff file a separate appeal in order to have the original appeal returned."  (ECF No. 28 at 2.)

26  By the time the original appeal was returned, the May 13, 2019 first level due date had expired.

27

28  [6]  "[A] cancellation or rejection decision does not exhaust administrative remedies."  Cal. Code of
Regs. tit. 15 § 3084.1(b).

1    Further, prison officials obstructed plaintiff's attempt to appeal to the second level by repeatedly

2    returning his appeal SAC-C-19-01390 four times without appropriate rejection documentation.

3    Plaintiff was required to seek intervention by the third level in order to get his appeal processed at

4    the second level.  Finally, plaintiff contends that the first and second level appeal rulings

5    "partially granted" plaintiff's appeals, because a work order was granted, thus exhausting

6    plaintiff's remedies because no monetary compensation was available.  (ECF No. 28 at 7.)

7         Defendant contends that plaintiff failed to present any competent evidence that he

8    properly exhausted his administrative remedies prior to filing this action.  Defendant argues that

9    plaintiff received a first level response on May 9, 2019, which he appealed, but "rather than await

10   a decision from the second level, prematurely filed suit before receiving a response at the second

11   level of review."  (ECF No. 31 at 2.)  Plaintiff's inmate appeal was still pending at the time he

12   filed this action, and he fails to show he is entitled to any of the limited exceptions to the PLRA.

13   Moreover, even if screening out plaintiff's inmate appeal log number SAC-C-19-02210 could

14   serve to exhaust plaintiff's claims, such appeal was screened on October 21, 2019, after plaintiff

15   filed this action in August.  (ECF No. 31 at 3.)

16        Following a discussion of the standards governing this issue, the undersigned addresses

17   the parties' arguments below.

18        A.  Governing Standards

19        The Supreme Court has reiterated that "all inmates must now exhaust all available

20   remedies," and there is no "special circumstances" exception to the PLRA's rule of exhaustion.

21   Ross, 136 S. Ct. at 1858.  That said, the PLRA does provide one textual exception by its use of

22   the term "available," meaning "'capable of use for the accomplishment of a purpose,' and that

23   which 'is accessible or may be obtained.'"  Id., quoting Booth, 532 U.S. at 737-38.  In Ross, the

24   Supreme Court found "three kinds of circumstances in which an administrative remedy, although

25   officially on the books, is not capable of use to obtain relief."  136 S. Ct. at 1858-59.  These

26   circumstances include:  "(1) when the administrative procedure 'operates as a simple dead end'

27   because officers are 'unable or consistently unwilling to provide any relief to aggrieved inmates';

28   (2) when the administrative scheme is 'so opaque that it becomes, practically speaking, incapable

12

1  of use' because 'no ordinary prisoner can discern or navigate it'; and (3) when prison

2  administrators 'thwart inmates from taking advantage of a grievance process through

3  machination, misrepresentation, or intimidation.'" Andres v. Marshall, 867 F.3d 1076, 1078 (9th

4  Cir. 2017) (quoting Ross, 136 S. Ct. at 1858-59).  However, "we expect that these circumstances

5  will not often arise." Ross, 136 S. Ct. at 1859 (citation omitted).

6        The Ninth Circuit has characterized the list in Ross as "non-exhaustive." Andres, 867

7  F.3d at 1078.  Thus, other circumstances may render administrative remedies unavailable,

8  including the failure of prison officials to properly process a prisoner's grievance, as cited by the

9  Circuit in Andres:

10           Brown v. Valoff, 422 F.3d 926, 943 n.18 (9th Cir. 2005) ("Delay in
             responding to a grievance, particularly a time-sensitive one, may
11           demonstrate that no administrative process is in fact available."); cf.
             also Robinson v. Superintendent Rockview SCI, 831 F.3d 148, 153
12           (3d Cir. 2016) (joining other circuits in holding "a prison's failure to
             timely respond to an inmate's properly filed grievance renders its
13           remedies 'unavailable' under the PLRA"); Boyd v. Corr. Corp. of
             Am., 380 F.3d 989, 996 (6th Cir. 2004) ("Following the lead of the
14           four other circuits that have considered this issue, we conclude that
             administrative remedies are exhausted when prison officials fail to
15           timely respond to a properly filed grievance."); Jernigan v. Stuchell,
             304 F.3d 1030, 1032 (10th Cir. 2002) ("[T]he failure to respond to a
16           grievance within the time limits contained in the grievance policy
             renders  an  administrative  remedy  unavailable."); Lewis v.
17           Washington, 300 F.3d 829, 833 (7th Cir. 2002) ("[W]e refuse to
             interpret the PLRA so narrowly as to permit prison officials to exploit
18           the exhaustion requirement through indefinite delay in responding to
             grievances." (alterations and internal quotation marks omitted)).
19

20  Andres, 867 F.3d at 1079.  A remedy also may be unavailable if prison officials reject or cancel

21  an appeal "for reasons inconsistent with or unsupported by applicable regulations." Sapp v.

22  Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010).

23        B.  Discussion

24        It is undisputed that appeal SAC-C-19-01390, signed by plaintiff on March 28, 2019, is

25  the appeal that would exhaust the instant claims.  Although the first level appeal response is dated

26  April 19, 2019, plaintiff provided evidence that he did not receive the first level response until

27  May 20, 2019, which did not include the return of appeal SAC-C-19-01390.  Defendant failed to

28  rebut such evidence.  Thus, prison staff failed to meet the initial thirty-day deadline in processing

1    plaintiff's appeal SAC-C-19-01390.

2           Such initial delay, while concerning, is insufficient, standing alone, to support a finding

3    that the administrative remedies were unavailable.  However, the next period of delay is

4    problematic.  Plaintiff received the first level appeal response on May 20, 2019.  But despite

5    plaintiff's multiple efforts to submit his request for second level review, prison officials did not

6    explain the delay.  Under Section 3084.8(e), "[e]xcept for the third level, if an exceptional delay

7    prevents completion of the review within specified time limits, the appellant, within the time

8    limits provided [above], shall be provided an explanation of the reasons for the delay and the

9    estimated completion date."  Id. at § 3084.8(e).  On October 21, 2019, plaintiff was sent a

10   screening notice that his inmate appeal log number SAC-C-19-01390 was given a "treat as

11   original" stamp and was assigned to the second level of review, and that no further action would

12   be taken on appeal SAC-C-19-02210, but there was no explanation for the delay.  In the

13   November 5, 2019 second level appeal response there was no explanation for the delay.

14          Viewing the evidence in the light most favorable to plaintiff, his appeal SAC-C-19-01390

15   was returned to plaintiff four separate times without any documentation explaining why.

16   Defendant did not rebut such evidence.  The second level response did not issue until November

17   5, 2019, almost seven months after the April 19, 2019 first level response.  Defendant did not

18   address such delay.  (ECF No. 31 at 2.)  Appeals Coordinator Hendricks and Acting Chief of the

19   Office of Appeals Vasquez also did not address such delay.  (ECF No. 27-3 at 7, 20.)

20          On this record, a trier of fact could reasonably conclude from the evidence that the

21   grievance process was effectively unavailable to plaintiff because prison staff did not properly

22   process plaintiff's request for second level review.  See Andres, 867 F.3d at 1078-79 (finding that

23   "[w]hen prison officials improperly fail to process a prisoner's grievance," the grievance process

24   is unavailable); Karas v. Marciano, 2017 WL 6816858, at *4 (C.D. Cal. Nov. 13, 2017) ("When a

25   prisoner submits a [grievance] but never receives a response thereto, the administrative remedies

26   are rendered effectively unavailable by defendants' actions." (citation and internal quotations

27   omitted).)

28          Defendant focuses on plaintiff's failure to obtain a third level review prior to filing this

                                                      14

action, and argues plaintiff should have waited for a response from the second level of review.
However, exhaustion is measured at the time the action is filed. <u>Andres</u>, 867 F.3d at 1079. Here,
the action was filed on August 12, 2019. Plaintiff submitted his request for second level review,
but it was returned to him on June 26, 2019, without the appropriate rejection documentation.
Thus, absent evidence not presented by defendant, at the time of the filing of this action,
administrative remedies were rendered unavailable to plaintiff by the improper handling of
plaintiff's request for second level review. <u>See Andres</u>, 867 F.3d at 1079; <u>see also Rupe v. Beard</u>,
2013 WL 2458398, *16 (E.D. Cal. 2013) ("after an inmate has waited a reasonable period of time
and has received no response or notice of delay, the failure by prison officials to abide by inmate-
grievance regulations must excuse the inmate's failure to exhaust; otherwise, prison officials
could indefinitely delay inmates from pursuing legal remedies simply by ignoring all inmate
appeals.") Indeed, plaintiff had already sustained an unreasonable delay in obtaining his first
level review response, further supporting his belief that his administrative remedies were no
longer available at the time he filed the instant action. The fact that plaintiff continued to pursue
administrative remedies does not alter this court's analysis under <u>Andres</u>. 867 F.3d at 1079;
<u>Padilla v. Hasley</u>, 2017 WL 1927874 (C.D. Cal. Mar. 9, 2017) ("That Plaintiff doggedly
continued to pursue his Free Exercise grievance after filing suit does not mean he lacked a
reasonable, good faith belief that administrative remedies were unavailable.")[7]

For all of the above reasons, the undersigned finds that plaintiff's efforts to exhaust his
claim was obstructed by prison staff, both by failing to timely return plaintiff's initial appeal, and
then by returning plaintiff's requests for second level review on multiple occasions, rendering the
appeals process unavailable. Because defendant failed to rebut plaintiff's evidence, the motion
for summary judgment should be denied.

////

////

---

[7] Indeed, in plaintiff's verified original complaint, plaintiff states his belief that prison staff were
withholding his grievance to prevent him from pursuing this action. (ECF No. 1 at 10.)

1    VIII.   Was Further Relief Available?

2          In the alternative, plaintiff contends that the first and second level appeal rulings "partially

3    granted" plaintiff's appeals, because a work order was granted, thus exhausting plaintiff's

4    remedies because no monetary compensation was available.  (ECF No. 28 at 7-8.)  Defendant

5    argues that plaintiff must exhaust administrative remedies even if the relief sought by the prisoner

6    is not available.  (ECF No. 27-1 at 4.)

7          "The obligation to exhaust 'available' remedies persists as long as some remedy remains

8    'available.'  Once that is no longer the case, then there are no 'remedies … available,' and the

9    prisoner need not further pursue the grievance."  Brown v. Valoff, 422 F.3d 926, 935 (9th Cir.

10   2005) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)).  "Once an agency has granted some

11   relief and explained that no other relief is available, 'the administrative process has not been

12   obstructed.  It has been exhausted.'"  Brown, 422 F.3d at 936, quoting Jasch v. Potter, 302 F.3d

13   1092, 1096 (9th Cir. 2002).

14         The record reflects that in response to plaintiff's appeal, on April 15, 2019, the roof above

15   plaintiff's cell was "inspected and found to have some deficiencies in the membrane."  (ECF No.

16   28 at 21.)  As plaintiff had requested, a work order was generated, and necessary repairs were

17   completed.  (Id.)  In the first level review response, the reviewer noted that plaintiff's request for

18   a work order was granted, and denied plaintiff's request for monetary compensation as it was

19   outside the scope of the appeals process.  The response identified no additional relief plaintiff

20   could obtain, and did not inform plaintiff that in order to exhaust his administrative remedies, he

21   must pursue his grievances through the third level of review.  (ECF No. 27-3 at 27.)

22         Defendant identified no other relief plaintiff could have obtained through the grievance

23   process.  Accordingly, defendant's motion should be denied.

24   IX.   Plaintiff's Cross-Motion for Summary Judgment

25         Plaintiff's opposition is styled, "Plaintiff's Opposition to Defendants Motion for Summary

26   Judgment and Plaintiff's Cross Motion for Summary Judgment."  (ECF No. 28 at 1.)  In his

27   notice to defendants, plaintiff claims that his opposition is accompanied by his cross-motion for

28   summary judgment sua sponte.  (ECF No. 28 at 2.)  In his prayer for relief, plaintiff contends that

16

1  his cross-motion "should be granted as there are genuine issues of material fact to be resolved."

2  (ECF No. 28 at 9.)

3         The authority to grant summary judgment sua sponte was made explicit in the current

4  version of Rule 56, effective December 2010.  Albino v. Baca, 747 F.3d 1162, 1176-77 (9th Cir.

5  2014) (citing Fed. R. Civ. P. 56(f)).  "[W]here the party moving for summary judgment has had a

6  full and fair opportunity to prove its case, but has not succeeded in doing so, a court may enter

7  summary judgment sua sponte for the nonmoving party."  Albino, 747 F.3d at 1176 (citing Cool

8  Fuel, Inc. v. Connett, 685 F.2d 309, 311 (9th Cir.1982)).

9         Plaintiff did not provide legal authorities or any argument to support his request for sua

10  sponte summary judgment.  On this record, the undersigned declines to recommend that plaintiff

11  be granted sua sponte summary judgment on the issue of exhaustion.

12  X.  Conclusion

13         Accordingly, IT IS HEREBY RECOMMENDED that:

14         1.  Defendant's motion for summary judgment (ECF No. 27) be denied; and

15         2.  This action be referred back to the undersigned for further scheduling.

16         These findings and recommendations are submitted to the United States District Judge

17  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

18  after being served with these findings and recommendations, any party may file written

19  objections with the court and serve a copy on all parties.  Such a document should be captioned

20  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

21  objections shall be filed and served within fourteen days after service of the objections.  The

22  parties are advised that failure to file objections within the specified time may waive the right to

23  appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

24  Dated:  April 30, 2020

25

26                                         KENDALL J. NEWMAN
                                           UNITED STATES MAGISTRATE JUDGE
27  mcco1586.msj.fte

28

17